UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| JOHN CLEMENTS,<br><br>                  Plaintiff,<br><br>v.<br><br>CLARK COUNTY, a political subdivision of the state of Idaho; NICK HILLMAN, in his individual and official capacity as County Commissioner; GREG SHENTON, in his individual and official capacity as County Commissioner; MACOY WARD, in his individual and official capacity as County Commissioner,<br><br>                  Defendants. | Case No. 4:23-cv-00244-DCN<br><br>**MEMORANDUM DECISION AND ORDER** |

## I. INTRODUCTION

Before the Court is Defendants Clark County, Nick Hillman, Greg Shenton, and MaCoy Ward's ("Defendants") Motion for Summary Judgment. Dkt. 18. On January 28, 2025, the Court held oral argument and took the Motion under advisement. Upon review, and for the reasons set forth below, the Court GRANTS in PART and DENIES in PART the Motion for Summary Judgment.

## II. BACKGROUND

Plaintiff John Clements was employed with the Sheriff's office of Clark County, Idaho, from October 2014 to November 2022. Dkt. 18-2, at 1–3. He initially worked as a deputy sheriff until January 11, 2021, when he took office as sheriff. *Id.* at 1–2. The Sheriff's office in Clark County is relatively small, and when Clements took office, he had two deputy sheriffs reporting to him. *Id.* at 2. Deputies worked four days on, four days off

for 12-hour shifts. Dkt. 21-4, at 9. During the days they were on, deputies were also on call for the 12 hours they were not on shift. *Id.* If the deputies ever worked more than 173 hours in 28 days due to these on call shifts, they would receive "comp time" at 1.5 hours per hour worked to later be used as vacation time, but they did not receive monetary compensation. *Id.*

When both deputies and the sheriff were on call, they had to remain in the county. Dkt. 21-1, at 2. Clements expressed his concern to Hillman, Shenton, and Ward ("Commissioners") about deputies receiving comp time instead of overtime pay when on call because he had previously worked in Jefferson County where a lawsuit was filed over a very similar policy. *Id.* Clements claims to have discussed his concerns with two of the Commissioners, and after Clements became sheriff, the county prosecutor obtained an opinion from the Idaho Counties Risk Management Program ("ICRMP") after continual prompting from Clements that ultimately agreed on-call time should be paid.[1] *Id.* After receiving that opinion, the Commissioners approved a policy where deputies were to work 11 hours and be on call for 13 hours, and one of those 13 hours would be compensated.[2] *Id.*

The remain-in-county policy, coupled with the small size of the department, complicated Clements' experience as sheriff. As sheriff, Clements would typically work a

---

[1] This report was not admitted into evidence. Clements referred to the report in his declaration. Dkt. 21-2, at 5.

[2] Notably, this policy was not instituted until after Clements became Sheriff. During his time as a deputy, he was only compensated during his on-call time when he went on an actual call and clocked back in. Any time that he was clocked in past the 173 hours, he was awarded comp time but no overtime pay. He received no compensation (including comp time or pay) for just being on call unless he received a call to go out.

standard day shift Monday through Friday from 8:00 a.m. to 5:00 p.m. and fill in for other deputies or dispatchers where he was needed. *Id.* at 4. When on call, he would receive anywhere from zero to three calls per shift, and he had to respond in person. His two full-time deputies were Bill Stadman and Richard Lundberg, and Brandyn Knight was hired as a reserve deputy sheriff in February 2021. *Id.* There always needed to be two officers on duty, so it could be difficult for a deputy to take vacation time because coverage was hard to arrange. In a pinch, Clements could get coverage from officers in other counties or the state police, but those officers held full-time positions in their respective departments; thus, their ability to help was limited.

In June 2022, Clements opened an investigation into Commissioner Greg Shenton and the reimbursements he was receiving with County funds. Dkt. 21-1, at 5. The investigation was closed very shortly after it was opened, but Clements felt his efforts to improve the Sheriff's Office after the investigation were met with resistance from the Commissioners.

Also in June 2022, Deputy Lundberg resigned. Clements sought to hire Deputy Knight full-time as his replacement, but Knight had a previous criminal record, and Clements was told by both the Commissioners and the prosecutor, Janna Birch, that they did not support the hiring of Knight.[3] Birch also expressed she would not call him to testify in any criminal case due to "potential Brady issues." Dkt. 21-1, at 5. Accordingly, Clements

---

[3] Clements did not need the approval of either the prosecutor or Commissioners to hire a deputy. It was completely within his discretion. However, even though Knight was POST certified, he did have a prior criminal record, and the Commissioners and Birch both indicated that was a concern for them. Clements still was free to hire Knight despite their concerns, and the sheriff who replaced Clements did hire Knight shortly after replacing Clements.

hired Rick Donahue to replace Deputy Lundberg, who needed to complete 14 weeks of POST training before he was able to begin working. In September 2022, Deputy Stadman resigned on short notice. *Id.* at 6. On Stadman's last day, Deputy Donahue left for POST training. This left Clements with no deputies, and he promptly posted the open position on several employment platforms. The only applicant for the open position was Deputy Knight.

Clements once again sought to hire Knight full-time but met resistance due to Knight's previous criminal record, although Knight maintained his POST certification. Feeling that he was unable to hire Knight because he would not be used in court, and having no other applicants for the open deputy position, Clements asked the Commissioners to either provide more funding, allow him the discretion to use budgeted funds for deputy wages, or redistribute his raise to deputy wages in order to attract more applicants.[4] *Id.* at 6–7. The Commissioners did not agree to any of Clements proposed solutions.

Due to a lack of deputies, Clements was working nearly non-stop from September to November 2022, except for the limited periods of time when Clements could arrange coverage with full-time officers in other departments. Because Clements was on duty or on call so frequently, he was only able to leave the County a handful of times.

On November 13, 2022, Clements started experiencing health issues. *Id.* at 8. Initially, the issues presented as back pain, which was diagnosed as kidney stones. He also

---

[4] Clements, as Sheriff, had complete control and discretion when it came to the managing of the Sheriff's Office. This includes the hiring and termination of deputies. However, the County commissioners set the budget for the Sheriff's Office, and the Sheriff is bound by those constraints. Additionally, the commissioners do hold a supervisory role over all official conduct of county officers. Idaho Code § 31-802.

experienced sleeplessness, fatigue, guilt, and feared making mistakes while on duty, all of which he attributed to being overworked. *Id.* at 8–9. Accordingly, on November 16, 2022, he submitted his resignation. In December 2022, Clark County hired Deputy Knight full time as deputy sheriff, and Clements went to work in the Butte County Sheriff's Office.

Clements filed the instant lawsuit on May 10, 2023. Prior to filing suit, Clements participated in the transfer of several prisoners from Butte County to Clark County so that they could be temporarily housed in Clark County. *Id.* at 10. Clements also helped Clark County with administrative work, at times providing guidance to the new Sheriff, Sheriff McClure, when he took office. Once the instant lawsuit was filed, Sheriff McClure contacted Clements and advised him that he was no longer allowed to transport inmates to Clark County, and a deputy would meet him at the county line if a transfer was necessary.[5] Such procedures were never used, as the arrangement was communicated to the Sheriff of Butte County, Sheriff Hansen, and he asked Clements to take inmates to a different county.

Defendants are now seeking summary judgment on all of Clements' causes of action (Dkt. 18),[6] and Clements has opposed the Motion (Dkt. 21). The Court heard oral argument on January 28, 2025, and took the Motion under advisement.

---

[5] There seems to be some debate between the parties as to the extent of this conversation. Clements claims the Commissioners and prosecutor did not want him inside the Clark County courthouse for any reason. Defendants claim the Commissioners and prosecutor no longer wanted Clements to have access to private areas of the courthouse but never limited his access as a private citizen. Neither party provides concrete evidence to back up their position but sets forth their respective positions in declarations and briefing.

[6] Clements amended his Complaint twice. Dkts. 4, 16. The operative complaint includes eight causes of action: (1) Violation of the Fair Labor Standards Act; (2) Violation of 42 U.S.C. § 1983 Freedom of Movement/Right to Travel; (3) Intentional Infliction of Emotional Distress; (4) Negligent Infliction of Emotional Distress; (5) Violation of the Idaho Wage Claim Act; (6) Wrongful Termination (Constructive Discharge) in Violation of Public Policy; (7) Violation of the Protection of Public Employees Act; (8)

### III. LEGAL STANDARD

Summary judgment is proper where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court does not weigh the evidence and determine the truth of the matter but rather determines whether there is a genuine issue for trial. *Zetwick v. Cnty. of Yolo*, 850 F.3d 436, 441 (9th Cir. 2017). In considering a motion for summary judgment, the Court must "view[] the facts in the non-moving party's favor." *Id.* The non-moving party must only present evidence upon which "a reasonable juror drawing all inferences in favor of the respondent could return a verdict in [his or her] favor." *Id.* The non-moving party cannot simply rely on an unsworn affidavit or the pleadings to defeat a motion for summary judgment but must set forth specific facts, supported by evidence, with reasonable particularity that preclude summary judgment. *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001).

The Court may only consider admissible evidence in ruling on a motion for summary judgment. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). Under the Federal Rules of Evidence, hearsay is not admissible. Hearsay is a statement that: (1) the declarant does not make while testifying at the current trial or hearing, and (2) a party offers in evidence to prove the truth of the matter asserted in the statement. Fed. R. Ev. 801(c). However, hearsay does not include a statement offered against an opposing party that was made by the party. Fed. R. Ev. 801(d)(2). Additionally, under Rule 602, a

---

Violation of 42 U.S.C. § 1983 Retaliation in Response to Exercise of First Amendment Rights. *See generally* Dkt. 16.

witness may only offer evidence when they have personal knowledge of the matter. Fed. R. Ev. 602.

## IV. DISCUSSION

As noted, Defendants are seeking summary judgment on all of Clements' causes of action: three claims based on federal law, and five claims based on Idaho state law. The Court will discuss each cause of action individually, first addressing what each requires, then exploring whether the evidence, construed in favor of Clements, presents a genuine issue of fact for trial.

### A. Fair Labor Standards Act

Under the Fair Labor Standards Act ("FLSA"), employers are obligated to pay employees a minimum wage and overtime compensation at not less than one and one-half times their regular rate when they work more than forty hours in a week. 29 U.S.C. §§ 206–07. The FLSA applies to those individuals who are "employed by a State, political subdivision of a State, or an interstate governmental agency," but it does not apply to elected officials in those organizations. 29 U.S.C. § 203(e)(2)(C)(i–ii(I)). The FLSA has a two-year statute of limitations from the time the "cause of action accrued," unless there was a willful violation of the FLSA, in which case there is a three-year statute of limitations. 29 U.S.C. § 255(a). A willful violation is one in which the employer knew or showed reckless disregard for whether they were violating the FLSA, and this includes disregarding the "very possibility that it was violating the statute." *Flores v. City of San Gabriel*, 824 F.3d 890, 906 (9th Cir. 2016) (cleaned up). A court will not presume conduct was willful if there is no evidence of such. *Alvarez v. IBP, Inc.*, 339 F.3d 894, 909 (9th Cir.

2003).

At the outset, the Court must determine whether the statute of limitations has run as to this claim, and if not, what form this claim takes. The parties agree—as does the Court––that Clements is not entitled to relief under the FLSA for minimum wage or overtime pay in his role as Sheriff because he was an elected official. However, the parties' agreement ends there.

First, Clements argues the County willfully violated the FLSA, such that all the time he worked between May 10, 2020, and January 11, 2021, as a deputy where he was on call but received no compensation was a violation of the FLSA for which he is entitled to relief because that is within the three-year statute of limitations. Additionally, he claims the time he was performing the role of both Sheriff and deputy from September to November 2022, which would be within the two-year statute of limitations, entitled him to additional compensation beyond his Sheriff's salary.

Defendants counter that the two-year statute of limitations applies because there was no willful violation of the FLSA. Accordingly, Clements, as elected Sheriff, was not entitled to FLSA protections from September to November 2022 because he cannot be both a deputy and a sheriff at the same time. If Clements cannot be regarded as a deputy and a sheriff at the same time under the FLSA, there is no other time that he worked as a deputy within the two-year statute of limitations, and his claims are precluded.

Clements, to support his argument of willfullness, alleges he told Defendants they were potentially violating the FLSA under their original on-call compensation policy, and he suspected such was true because he was aware of a similar policy and resulting lawsuit

in Jefferson County. Also, Clements references a report prepared by ICRMP which allegedly told Defendants their on-call policy violated the FLSA, which, in turn, caused them to make an adjustment to how they compensated officers for being on call.

Under the FLSA, a cause of action accrues for the purposes of the statute of limitations "at each payday immediately following the work period for which compensation is owed." *Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1144 (9th Cir. 2007) (cleaned up). In other words, a plaintiff can only recover unpaid overtime wages that are owed for pay periods in the two years (for a non-willful violation of the FLSA) or three years (for a willful violation of the FLSA) immediately preceding the filing of his or her Complaint. *See Bolos v. Waldorf=Astoria Management LLC*, 762 F. Supp. 3d 975, 1008–09 (D. Hawai'i 2025) (collecting cases). Clements filed his Complaint on May 10, 2023. Thus, if he can prove Defendants willfully violated the FLSA, his claim must have accrued on or after May 10, 2020. If not, his claim needed to accrue on or after May 10, 2021, to fall within the applicable statute of limitations.

The statute of limitations is particularly important in this case. If the two-year statute of limitations applies, Clements was elected Sheriff on January 11, 2021, which was four months before the latest date his cause of action could have accrued—according to when he filed his Complaint—and fall within this limitations period, barring any recovery for his unpaid overtime compensation when he was working solely as a deputy. However, Clements still contends he would be entitled to recover for the time he was fulfilling the role of deputy between September and November 2022, despite also being the elected Sheriff. Thus, the Court must first determine whether Clements can simultaneously be an

elected Sheriff but still be considered a deputy under the FLSA when he is covering and fulfilling the role of a deputy.

The short answer to this question is no. The FLSA specifically excludes an elected official from its definition of employee and, therefore, excludes them from recovery. 29 U.S.C. § 203(e)(2)(C)(ii)(I). There is no exception for an elected official fulfilling certain employee roles or duties as opposed to others. What's more, Idaho law does not require a Sheriff to fulfill the role of deputy in the event of a staffing shortage. Sheriffs have many statutory duties, including preserving the peace, Idaho Code § 31-2202, and they are empowered to appoint deputies that their office needs, Idaho Const. art. XVIII, § 6. While a sheriff might continue to fulfill roles that a deputy also fulfills, that does not make him a deputy in those moments. Any "filling in" a sheriff does in those moments would simply be him fulfilling his obligation as sheriff to preserve the peace.

It would also be extremely difficult, if not impossible, to strictly delineate when a sheriff was acting as a deputy for purposes of the FLSA. Sheriffs in Idaho have no requirements to work a certain number of hours in a week, so it is not as simple as counting hours that Clements worked beyond those statutorily required. Additionally, even if Clements documented every activity he performed from September to November 2022, deputies do not have statutorily required duties like sheriffs, so sorting activities into those reserved for deputies and those reserved for sheriffs would also be difficult, if not impossible. There is a clear delineation between sheriffs and deputies, with sheriffs having complete autonomy to supervise deputies. There is simply no indication that a sheriff can simultaneously fill the position of deputy and then recover under the FLSA. In conclusion,

Clements is not entitled to recover unpaid overtime compensation from September to November 2022 under the FLSA because he was an elected official during that time and covering another person's duties—who was not elected—is not a recognized exception under the statute.

Based on this conclusion, Clements can only hope to recover under the FLSA if the three-year statute of limitations applies so that he is entitled to any unpaid overtime compensation from May 10, 2020, to January 11, 2021, when he was still working as a deputy. But as noted above, the three-year limitation period will only apply if Defendants willfully violated the FLSA. Even construing the facts in favor of Clements, he has not done enough to establish a dispute of material fact as to whether Defendants willfully violated the FLSA.

Clements relies on his sworn affidavit and deposition testimony that he had notified Defendants of a similar overtime compensation policy in Jefferson County which resulted in a FLSA lawsuit, and the fact that ICRMP had prepared some sort of report indicating the policy in Clark County violated the FLSA, to show willfulness on the part of the Defendants. However, self-serving statements from a plaintiff alone are not enough to create a dispute of material fact on summary judgment. *See Enter. Mgmt. Ltd., Inc. v. Construx Software Builders, Inc.*, 73 F.4th 1048, 1055 (9th Cir. 2023) (cleaned up) (holding a declaration and deposition can create an issue of material fact but the contents of those documents must state more than a mere conclusion; the opinion must be based on personal knowledge, be legally relevant, and internally consistent). But when a plaintiff fails to provide detailed facts or any supporting evidence, a declaration and/or deposition

testimony cannot create a genuine issue of material fact. *Id.*

During Clements' deposition, he claimed he notified all three commissioners during his time as a deputy they might be violating the FLSA because "Jefferson County had been the exact same way and ended up having to pay a bunch of back time, and I had talked to them and let them know that's not legit." Dkt. 21-4, at 34. Clements failed to provide any information about when he notified the Commissioners or in what manner he notified them. Clements also failed to provide any evidence about this supposed other case in Jefferson County, its outcome, or whether that policy was similar in any way to the policy in place in Clark County at the time. There is no corroboration or evidence whatsoever to illustrate he spoke with the Commissioners.

Similar problems arise with the ICRMP report. Clements alleges the prosecutor obtained a report from ICRMP related to the overtime pay issue, indicating Clark County's policy was a problem. Defendants objected to this assertion on the basis of hearsay and lack of evidence. Clements never provided the report from ICRMP or anything beyond his contention that it exists. The Court pressed Clements for more information at the hearing, but Clements admitted he did not have the opinion from ICRMP, it was not in the record, and that he was unaware of whether it was even an oral opinion or a written one. In fact, he stated the prosecutor represented what ICRMP had told her to the Commissioners at a meeting, but Clements was not even sure if there were meeting minutes representing that conversation. While Clements claimed at the hearing that any hearsay issue could be cured at the time of trial, it is unclear to the Court how such concerns could be remedied when there seems to be a question as to whether any corroborating evidence even exists in the

first place.

Because the only two ways in which Clements claims the Defendants had notice of the potential violation of the FLSA was through his comments to them about the Jefferson County case and the ICRMP report, and the only evidence he has of either is his own conclusory statements, he has not created a genuine issue of material fact as to Defendants willfulness. Thus, the statute of limitations is two years and precludes his claims under the FLSA for his time as a deputy. Defendants Motion for Summary Judgment on this claim is GRANTED.

### B. 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege a violation of rights protected by the Constitution or created by federal statute proximately caused by conduct of a person acting under color of state law. *Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991). Under Idaho Law, county commissioners supervise the official conduct of county officers, including sheriffs, and they also set the budget for all sheriff's offices. Idaho Code § 31-802. Clements has alleged the Defendants violated his constitutionally protected right to freedom of movement and to file a lawsuit without retaliation.

#### 1. Freedom of Movement/Right to Travel

The right to interstate travel has been long recognized by the Supreme Court, and such a right is a fundamental right of the constitution. *Matsumoto v. Labrador*, 701 F. Supp. 3d 1069, 1076 (D. Idaho Nov. 8, 2023). The right to travel includes the right to enter one state and leave another, and such a right can be implicated when a law deters such travel. *Id.* at 1077. Clements alleges that the Defendants' policy that officers must remain within

MEMORANDUM DECISION AND ORDER - 13

the County while on-call, coupled with their unwillingness to help him fully staff his office when they were aware this would require him to work nearly around the clock, violated his constitutional right to enter one state and leave another because it effectively trapped him in Clark County. In his Complaint, Clements also alludes to the fact that he was prevented from entering the County after filing suit, which violated his right to travel as well.

Addressing the last point first, Clements seems to imply in his briefing that, while the right to interstate travel is the crux of the claim here, he believes his right to *intrastate* travel was restricted as well, and it would not be absurd for the Court to recognize such a violation. The Court will not recognize a right to intrastate travel today because this is a novel concept, and Clements has not put forth any authority that would allow the Court to make such a holding. As such, the only issue remaining is whether there is evidence Defendants restricted Clements right to interstate travel.

Much as above, there is a lack of evidence from Clements which could establish a genuine issue of material fact for trial on this claim Most importantly, when Clements was asked about the stay in county while on call policy during his deposition, he admitted it was simply a "policy from the county from the day [he] started there," but he could not clarify whether it was a written or verbal policy. Dkt. 21-4, at 34. He admitted the Commissioners never communicated to him, whether by email, letter, or verbally, that he *had* to stay in the county or face disciplinary action or other negative consequence. Clements also conceded that, as the elected sheriff, the Commissioners were not his supervisor and were limited to setting the sheriff's office budget.

At this point, the evidence at most indicates there was an unspoken rule that, when

MEMORANDUM DECISION AND ORDER - 14

on call, officers should stay in the County. This does not rise to the level of a law that interferes with interstate travel. Without corroborating evidence, at the very least, that this policy even existed in a formal capacity, there is not genuine issue as to a material fact. Defendants' Motion for Summary Judgment on this claim is GRANTED.

### 2. First Amendment Retaliation

Individuals have a constitutional right to file civil rights litigation in federal court. U.S. Const. Amend. 1 (granting people the right to petition the Government for redress of grievances, including accessing the courts to present complaints); *see also Wooley v. Maynard*, 430 U.S. 705, 710 (1977) (citing *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 609–10 n. 21 (1975)) ("[A] litigant is entitled to resort to a federal forum in seeking redress under 42 U.S.C. § 1983 for an alleged deprivation of federal rights."). Under the First Amendment, a person may have a claim for retaliation where: "(1) [the plaintiff] was engaged in a constitutionally protected activity, (2) the defendant's actions would chill a person of ordinary firmness from continuing to engage in the protected activity and (3) the protected activity was a substantial or motivating factor in the defendant's conduct." *O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016). Clements argues his exclusion from Clark County and its buildings for prisoner transfers was retaliation for him filing suit. Defendants counter that such an issue is moot because Clements has since started working for Teton County, which does not transfer prisoners to Clark County, and he was never actually excluded from Clark County.

First, the Court finds this issue is not moot. As Clements notes, an issue is not moot unless the Court is unable to provide relief. Even though Clements has since moved to a

different county, there is still a question as to whether Clements suffered injury in the months he was working with Butte County but was unable to perform prisoner transfers to Clark County. As such, until that question is answered, this issue is not moot.

Second, looking to the elements for a First Amendment retaliation claim, Clements engaged in the constitutionally protected activity of filing a civil rights lawsuit. It does seem that the filing of the lawsuit was a catalyst for Clark County's policy that Clements was no longer welcome in the County for prisoner transfers, even if it was to prevent potential problems in him accessing secure locations. Whether such a consequence would chill a person of ordinary firmness from filing lawsuits is a question of fact for the jury to answer. As such, Defendants' Motion as to this cause of action is DENIED.

### 3. Qualified Immunity

Defendants argue even if the Court does not dismiss Clements' First Amendment claim, it should be dismissed because the Commissioners are entitled to qualified immunity. Public officials are entitled to qualified immunity that protects them from liability for civil damages when "their conduct does not violate clearly established statutory or constitutional rights." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A right is clearly established when it is "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

While Defendants argue Clements constitutional rights were not violated, "and even if they were, the rights were not clearly established," the Court has already held there is an existing question as to whether Clements rights were violated under the First Amendment. As far as the First Amendment rights being clearly established, "the prohibition against

MEMORANDUM DECISION AND ORDER - 16

retaliatory punishment is 'clearly established law' in the Ninth Circuit, for qualified immunity purposes." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (citing *Schroeder v. McDonald*, 55 F.3d 454, 461 (9th Cir. 1995)). Thus, the Commissioners are not entitled to qualified immunity, and Defendants Motion on this issue is DENIED.[7]

### 4. Monell

As a final point, Defendants argue Clements' § 1983 claims must fail against Clark County because it did not have a "policy, practice, or custom that deprived [Clements] of any constitutional right," it cannot be liable under a theory of respondeat superior, and the municipality itself did not cause any of the constitutional violations at issue. Dkt. 18-1, at 11. A § 1983 claim against a municipality can only be successful where: (1) the plaintiff was deprived of a constitutional right; (2) the municipality or entity had a policy; (3) the policy amounted to deliberate indifference to the plaintiff's constitutional right; and (4) the policy was the moving force behind the constitutional violation. *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 692 (1978). Where there is no written policy, "decisions of a government's lawmakers, the acts of its policymaking officials, [or] practices so persistent and widespread as to practically have the force of law[]" can support a *Monell* claim. *Id.* at 691.

Clements cannot maintain a § 1983 claim against the County under *Monell*. First, the Court has already held he has not alleged sufficient facts to establish a violation of his

---

[7] The Court again notes that whether the Defendants excluding Clements from performing prison transfers violated his constitutional rights is a fact intensive inquiry that is a question necessary for the jury. Based on the testimony and outcome of trial, Defendants *may* be able to re-litigate the issue.

MEMORANDUM DECISION AND ORDER - 17

right to interstate travel because he could not provide any evidence of an official policy either from the County or the Commissioners that the sheriff or deputies must remain in the county while on call. That leaves only his claim for retaliation under the First Amendment. While he has a viable claim against the Commissioners for the reasons set forth above, *Monell* precludes him from maintaining the action against the County.

Namely, the decision to keep Clements from entering the county for prison transfers was that of the new sheriff and Commissioners. There is no evidence that the decision was made under any policy whatsoever; rather, that is what they thought was best in this specific set of circumstances. There is no evidence that the County or any of its agents had done something like this to another person in a similar situation, so Clements cannot rely on any persistent or widespread practice. Therefore, *Monell* precludes Clements from asserting a § 1983 First Amendment retaliation claim against Clark County, and Defendants are GRANTED summary judgment on this issue.

### C. Idaho Protection of Public Employees Act ("IPPEA")

Per Idaho Code, an employer cannot take any adverse action against an employee who reports waste of public funds, or violations, or suspected violations, of any law, rule, or regulation. Idaho Code § 6-2104(1)(a). Plaintiff may make a *prima facie* case for retaliatory discharge under the IPPEA by showing: (1) he was an employee who engaged in a protected activity; (2) his employer took adverse action against him; and (3) there is a causal connection between the protected activity and the adverse action. *Van v. Portneuf Medical Center, Inc.*, 330 P.3d 1054, 1059 (Idaho 2014) (cleaned up). Constructive discharge is an adverse action under the IPPEA, and the plaintiff must prove "working

conditions became so intolerable that a reasonable person in the employee's position would have felt compelled to resign." *Patterson v. State, Dept. of Health and Welfare*, 256 P.3d 718, 725 (Idaho 2011) (cleaned up).

Clements alleges he engaged in protected activity when investigating Commissioner Shenton for misappropriation of government funds and when he expressed his concerns about public safety during the time he could not fill the vacant deputy position. The parties do not dispute, and the Court agrees, this constituted a protected activity under the first prong of the test.

Clements has also alleged enough to create a genuine issue of material fact as to whether he was constructively discharged. He notified the Commissioners that he had only attracted two applicants for the two vacant deputy positions. He had hired one of them, and the Commissioners and Prosecutor Birch expressed their concern with the hiring of Deputy Knight for *Brady* reasons. Importantly, Clements retained complete discretion to hire Knight after receiving this information, and he chose not to. The Court acknowledges that Clements had good reason to exercise his discretion not to hire Knight, because it would be very unhelpful to have one of two deputies in a county unable to testify in court. However, the Commissioners never did—nor did they have the power to—refuse to hire Knight. Clements could have hired Knight for more coverage until he was able to work out a more long-term, practical solution, which would have prevented his need to work round-the-clock to the point of exhaustion. In plain words, Clements cannot argue his own failure to hire Knight, which was only his decision to make, amounted to a constructive discharge by the Commissioners.

MEMORANDUM DECISION AND ORDER - 19

The Commissioners did, however, have the power to adjust the Sheriff's Office budget to allow Clements to offer more competitive salaries for the deputy positions and attract more applicants. In fact, Clements suggested multiple solutions to the budgetary issue, and the Commissioners rejected them all. The Commissioners knew of Clements' predicament, and they reasonably should have known that Clements, as Sheriff with the responsibility to preserve the peace, would need to continue with his duties and cover for deputies if he was unable to fill the vacant positions. Yet, they were unwilling to offer any budgetary solutions to help him fill the vacant positions. This is enough evidence to create a genuine issue as to whether the Commissioners lack of budgetary support led to Clements' exhaustion such that he felt he had to quit under the second prong.

Clements IPPEA claim cannot survive, though, because he has failed to provide any evidence of a causal connection between the protected activity and adverse action—the third prong of the test. Other than Clements' assertion that he "started hitting brick walls with the commission" shortly after he closed his investigation into Commissioner Shenton, nothing transpired which would indicate the Commissioners budgetary decisions were related in any way to the investigation or to spite Clements in any way.[8] Dkt. 21-1, at 31. While it is true the new sheriff who assumed Clements' position hired Knight almost immediately, there is no indication that the Commissioners had anything to do with that decision or that the decision was, in any way, related to the budget. What's more, the

---

[8] This is especially true considering county commissioners set the county budget through a rigorous process set forth in Idaho Code Title 31, Chapter 16, and the budget must account for not only the sheriff's office, but the needs of the entire county. Without more evidence from Clements, the Court cannot conclude there is sufficient evidence that the Commissioners refused his budgetary suggestions for any retaliatory reason.

Commissioners would have been unable to control whether Knight was used as a witness in court, thus undercutting the idea that they played any significant role in the ultimate hiring decisions by the sheriff.

There is no denying Clements was placed in a very tough position without being able to offer deputy candidates more money, but these conclusory facts do not create a genuine issue of material fact as to whether there is a causal connection under IPPEA between the protected activity and the adverse action. Defendants' Motion is GRANTED on this claim.

### D. Constructive Discharge in Violation of Public Policy

Both parties focus their arguments on this claim around the fact that Idaho does not recognize a claim for constructive discharge in violation of public policy. *See Schnuerle v. San Joaquin Valley College, Inc.*, 2024 WL 185278, at *6 (D. Idaho Jan. 16, 2024). While technically true, this issue is incredibly nuanced due to the public policy exception to the at-will doctrine.[9] In short, this type of claim is only recognized where an *at-will* employee engages in a protected activity, the employee can provide a legal source for the public policy at issue, they can prove they acted sufficiently in furtherance of that policy, and they can show that action caused an adverse employment action from their employer. *Id.* at *7– *11.

---

[9] Idaho is an at-will employment state, which means there is a presumption employees can be terminated at any time for any reason without creating employer liability. However, when a wrongful termination violates some affirmative, documented public policy, that presumption can be rebutted, and an employer can be held liable. *See generally Arriwite v. SME Steel Contractors, Inc.*, 2021 WL 1218451 (D. Idaho Mar. 31, 2021) (setting forth the history of the public policy exception in Idaho and the limited circumstances upon which such a claim can proceed).

The Court does not need to reach the elements set forth above, as the public policy exception to the at-will doctrine does not apply in this situation. Clements was an elected official of Clark County, not an at-will employee. Clements could only be "terminated" as sheriff under Idaho Code § 59-901 or § 63-1405. Importantly, the commissioners would not be involved in such a termination, apart from suspending Clements pending a final adjudication in accordance with § 63-1405. Despite Clements arguments that "the Idaho Supreme Court has applied constructive discharge in other employment contexts, and other jurisdictions recognize constructive discharge as a basis for a wrongful termination in violation of public policy claim," Dkt. 21, at 14, he was unable to provide any case, statute, or other legal authority suggesting such a claim is appropriate in *this* context or jurisdiction. "[I]n the absence of *any* authority to the contrary, the Court declines to extend Idaho's public policy exception to the at-will employment doctrine under the circumstances at issue here." *Schnuerle*, 2024 WL 185278, at *7 (emphasis in original). Defendants Motion is GRANTED on this claim.

### E.  Idaho Wage Claim Act

Similar to the FLSA, the Idaho Wage Claim Act ("IWCA") does not protect the wages of elected officials, but it does protect the wages of public employees. *See Lane v. Humana Marketpoint, Inc.*, 2011 WL 2181736, at *10 (D. Idaho June 3, 2011); *La Brosse v. Board of Com'rs, Boundary County*, 672 P.2d 1060, 1063 (Idaho 1983). Accordingly, Clements only claims he is entitled to relief under the IWCA for the time he worked as his own deputy from September to November 2022. The Court has already found that Clements cannot serve as both a deputy and a sheriff at the same time, and the reasoning

for that finding is the same under IWCA as it is under the FLSA. The Idaho Supreme Court has expressly excluded sheriffs from relief under IWCA. *See La Brosse*, 672 P.2d at 1063 (collecting cases). And while the sheriff position is distinct from the deputy position, a sheriff's duty to preserve the peace would make it next to impossible to delineate when a sheriff is working as a sheriff or a deputy. Defendants are GRANTED summary judgment on this claim.

### F.  Negligent Infliction of Emotional Distress

A plaintiff is entitled to relief for negligent infliction of emotional distress ("NIED") where there is: (1) a legal duty recognized by law; (2) a breach of that duty; (3) a causal connection between the defendant's conduct and the plaintiff's injury; and (4) actual damages. *See Knudsen v. J.R. Simplot Co.*, 483 P.3d 313, 328 (Idaho 2021) (cleaned up). Plaintiff must show any emotional distress caused by Defendants' NIED was accompanied by some sort of physical manifestation of an injury. *Frogley v. Meridian Joint Sch. Dist. No. 2*, 314 P.3d 613, 624 (Idaho 2013) (cleaned up).

Clements contends the commissioners owed him a duty to supervise his work to ensure he was fulfilling the duties of his office, fix the compensation of his officers, fill vacancies by appointment, and "do and perform all other acts and things required by law . . . which may be necessary to the full discharge of the duties of the chief executive authority of the county government." Idaho Code §§ 31-802, 816, 817, 828. Clements also alleges the commissioners failed in that duty by not allowing him to hire Knight,[10] the one

---

[10] The Court reemphasizes that the Commissioners had no authority to "allow" Clements to hire anyone. That was fully within Clements' discretion.

applicant for the open duty position, and not allowing for a higher budget for deputy salaries to increase applicant interest. In doing so, he alleges they negligently allowed him to work nearly around the clock, which eventually led to his health issues and resignation. Defendants counter the Commissioners did fulfill any duty they may have owed to Clements by setting the budget, and Clements was otherwise free to resolve the issues he experienced.

Clements' references to Idaho Code show that the Commissioners, at the very least, had a statutory interest in seeing the Sheriff's Office succeed. Construing those statutes in favor of Clements, there is a genuine question as to whether those statutes created a legal duty from the Commissioners to Clements. It also creates a question whether their refusal to make any budget adjustments constituted a breach of that duty. That is a question for the jury, and as such, Defendants' Motion is DENIED on Clements claim for NIED.[11]

### G. Intentional Infliction of Emotional Distress

A claim for intentional infliction of emotional distress ("IIED") must pass a much higher bar than a claim for NIED. To succeed, a plaintiff must show: (1) that the defendant acted intentionally or recklessly; (2) that the defendant's conduct was extreme and outrageous; (3) that there was a causal connection between the defendant's conduct and the plaintiff's emotional distress; and (4) that the plaintiff's emotional distress was severe." *Stanton v. Battelle Energy All., LLC.*, 83 F. Supp. 3d 937, 947–48 (D. Idaho 2015). Extreme

---

[11] Defendants do not argue a lack of medical documentation supporting this claim. But the Court has not seen such evidence. Clements will, of course, be required to prove his damages at trial consistent with Idaho Code and Federal Rule of Civil Procedure 26(a)(1)(A)(iii).

and outrageous conduct is conduct which is "atrocious and beyond all possible bounds of decency." *Id.*

Defendants claim there has been no behavior from the Commissioners that could qualify as extreme and outrageous. Clements counters the Commissioners took advantage of Clements' loyalty to allow him to work to the point of exhaustion, all in retaliation for his brief investigation into Commissioner Shenton. Clements alleges the desire to retaliate for the investigation was the Commissioners' motivation for not hiring Knight (even though that was within Clements' discretion, not the Commissioners) until the month after Clements left and for refusing to make concessions with the budget. Unfortunately, Clements fails to support this frankly bold allegation with any concrete evidence. Rather, the allegation seems to come out of left field at the end of his response brief, but there is no accompanying documentation or testimony as to the Commissioners' motivations. Without any evidence, Defendants Motion as to Clements' IIED claim is GRANTED.

## V. CONCLUSION

Clements has presented a genuine issue as to a material fact related to his First Amendment retaliation claim, but he cannot maintain any § 1983 claims against the County under *Monell*. He has also presented a genuine issue of material fact as to whether Defendants can be liable for negligent infliction of emotional distress. Otherwise, he has failed to provide sufficient evidence on any of his claims to create a genuine issue as to a material fact.

Thus, Clements § 1983 claim for First Amendment retaliation against Hillman, Shenton, and Ward will move forward along with his negligent infliction of emotional distress claim against all Defendants. All his other claims are DISMISSED with PREJUDICE.

## VI. ORDER

1. Defendants' Motion for Summary Judgment (Dkt. 18) is **GRANTED** in **PART** and **DENIED** in **PART**.

   a. Counts I, III, V, VI, VII of Clements' Complaint are **DISMISSED** with **PREJUDICE**.

   b. Count IV of Clements' Complaint will move forward against all Defendants.

   c. Count II of Clements' Complaint related to First Amendment retaliation will move forward against Defendants Hillman, Shenton, and Ward but is otherwise **DISMISSED** as to the County.

DATED: September 3, 2025

David C. Nye
Chief U.S. District Court Judge